IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANKLIN J. MORRIS, as Personal
Representative of the Wrongful Death
Estate of MARCELLINO MORRIS, JR.
(Deceased),

        **Plaintiff,**

v.                                      1:15-CV-00055 JCH-LF

GIANT FOUR COURNERS, INC. d/b/a
GIANT #7251,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON NEGLIGENT ENTRUSTMENT

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment on Negligent Entrustment. [Doc. 43] After careful consideration of the parties' pleadings, evidence, and applicable law, the Court concludes that the motion should be denied.

**I.    FACTUAL BACKGROUND**

The following facts are either undisputed or are relevant facts, established by admissible evidence, that most favor Defendant Giant Four Corners, Inc.

On the evening of December 29, 2011, Andy Denny drove to a high school basketball tournament in Window Rock, Arizona, which was about an hour and fifteen minutes away from his home. [Doc. 48-1, p. 2 at 18:11-18] Around 8:00 P.M, after watching about 40 or 45 minutes of a basketball game, Denny drove to Gallup, New Mexico, where he stopped to purchase beer at a grocery store. [*Id.* p. 6 at 46:8-10; 46:13-19] Denny drank three or four beers before heading to

a bar in Gallup. [*Id.* p. 6 at 47:3-8] Denny remained at the bar until it closed around 2:00 A.M. [*Id*. p. 6 at 47:23-25] Denny testified at a later deposition that he consumed five more beers and two shots of hard liquor in the five hours he was at the bar. [*Id*. p. 6 at 47:14-48:5]

Later, in the early morning hours of December 30, 2011, before the accident, Denny went to Tohatchi to pick up his friend Cecilia Yazzie. [*Id*. p. 3 at 27:3-21] Although Yazzie could not remember if Denny appeared intoxicated at that time, she testified that she was not scared to get in the car with him. [Doc. 48-2, p. 8 at 50:16-20; p. 11 at 69:22-25] Denny and Yazzie provide conflicting testimony about who then drove Denny's vehicle—Denny stated that Yazzie drove throughout the time they were together, while Yazzie explained that Denny drove at all times she was with him. [*Id.* p. 8 at 50:7-25 – 51:1; p. 11 at 67:18-22; p. 9 at 63:17-25 – 64:1-4] At approximately 5:00 A.M., Denny's car ran out of gas. [Doc. 43-1, p. 3 at 28:20-23] Denny and Yazzie walked approximately one mile to the nearest gas station, the Tohatchi Giant gas station. [Doc. 43-2, p. 2 at 19:14-25-20:1-2; p. 5 at 52:1-8] During the walk to the gas station, Denny drank two more beers. [*Id*. p. 2 at 20:14-22; 21:2-4] Yazzie testified that Denny walked to the gas station without problems and that she had no trouble understanding his speech. [Doc. 48-2, p. 8 at 52:25-53:1-14] At the gas station, Yazzie was intoxicated, and believed that Denny was too. [*Id*. p. 4 at 22:4-16] However, Yazzie could not remember whether Denny displayed manifestations of intoxication, such as slurred speech or difficulty walking, though she recalls his breath smelling like alcohol. [*Id*. p. 2 at 8:16-25; 9:1-5]

The Giant gas station did not have any gasoline cans available for purchase, so Yazzie suggested they buy a liter of soda and use the bottle to carry gasoline back to Denny's car. [*Id*. p. 9 at 58:3-12; Doc. 43-2, p. 6 at 56:2-3] Yazzie stated that the clerk, Gloria Pine, refused to sell anything to her and believed that was because Pine knew Yazzie was intoxicated. [Doc. 48-2, p.

2

4 at 22:1-3] She also testified that when she asked whether they could purchase the soda bottle and use it for gas, Pine responded "no" and "both of you look intoxicated." [*Id*. p. 9 at 58:13-15] However, there is no evidence in the record that Pine initially refused to sell anything to Denny, and, Pine did sell Denny a gallon of water and a gallon of gasoline at approximately 5:20 A.M. [Doc. 43-2 p. 3 at 25:6-8; p. 7 at 60:20-25 - 61:1-5; Doc. 43-5]. Denny and Yazzie then went to a gas pump, dumped the jug's contents, and Yazzie held the gallon jug while Denny pumped gas into it. [Doc. 48-2, p. 5 at 26:1-4] Denny and Yazzie then returned to Denny's vehicle on foot. [*Id*. p. 10 at 62:10-12] Yazzie testified that on the return trip Denny again walked without problems. [*Id.* p. 10 at 63:18-22] They deposited the gallon of gasoline into the car, and returned to the gas station about twenty minutes later. [Doc. 43-2, p. 4 at 28:11-14] Denny went into the store, and around 5:40 A.M., Pine sold Denny an additional nine gallons of gasoline, a pack of cigarettes, and a soda. [*Id.* p. 4 at 29:5-14; Doc. 43-5]

After dropping Yazzie off at her house, at about 6:40 A.M., Denny, alone in his car, drove his vehicle across the center line on U.S. Highway 491 and collided with Marcellino Morris's vehicle. [Doc. 48-2 p. 5 at 29:23-25; Doc. 43-6] Denny survived the collision but Mr. Morris died as a result of the crash. [Doc. 43-6, p. 3] Officer Daniel Kalleco was the first officer to arrive to the scene of the collision and reported that he observed signs of intoxication when he spoke to Denny. [Doc. 43-7, p. 2 at 21:17-21] More than three hours after the crash, Denny's blood alcohol level was .176. [Doc. 43-3, p. 2 at 32:7-8] Expert toxicologist, Dr. Paul Goldstein, later calculated that Denny's blood alcohol level would have been approximately .21 at the time he purchased the gasoline. [Doc. 43-8, p. 2]

The Tohatchi Giant store did not sell alcohol. [Doc.48-3, p. 5 at 97:18-20] Criminal Investigator Christopher Reyes Tsosie testified that in his experience, gas stations in the area sell

3

gasoline to intoxicated persons. [*Id.* p. 7 at 109:21-24] And both Tsosie and Kalleco testified that they did not know of a gas station that would refuse to sell gasoline to an intoxicated person. [*Id.* p. 4 at 93:15-25; Doc. 48-4, p. 3 at 42:3-6] Pine had discretion to refuse a sale of gasoline to an intoxicated person, and she received training to identify the signs of intoxication in a person. [Doc. 43-4, p. 2 at 28:12-25 – 29:1-8; p. 3 at 38:1-10] However, Pine testified to having no memory of her work shift on December 30, 2011. [*Id.* p. 3 at 40:4-7]

In a later deposition Denny described himself as an alcoholic at the time of the crash. [Doc. 48-1, p. 10 at 68:7-24] He admitted to driving while drunk before, and would sometimes drink to the point of "blackout." [*Id.* p. 11 at 70:10-21] Both parties agree that Denny consumed at least ten beers and two shots of hard liquor from the time he starting drinking around 8:00 P.M. until the time he encountered Pine around 5:20 A.M. the next day, but the parties disagree about his level of intoxication at the time he purchased gasoline and what effect the alcohol had on his appearance when he encountered Pine.

## II.  PROCEDURAL BACKGROUND

Plaintiff originally filed suit in the District Court of the Navajo Nation in Crownpoint, New Mexico. [Doc. 38-1] That court granted Defendant's motion for summary judgment on the basis that Plaintiff's suit was filed after the two-year statute of limitations for personal injury claims under the Navajo Nation Code. *See* 7 N.N.C. § 602(A)(1). [Doc. 38-5] Plaintiff has appealed the decision to the Navajo Nation Supreme Court and is currently awaiting a ruling on that appeal.

Before the District Court of the Navajo Nation issued a decision on the summary judgment motion, Plaintiff filed a wrongful death complaint alleging vicarious liability for negligent entrustment of a chattel and direct liability for negligent hiring, training, and

supervision in New Mexico state district court, [Doc. 1-1], which Defendant removed to this Court. [Doc. 1] On November 5, 2015, Defendant filed motion to dismiss under Fed. R. Civ. P. 12(b)(6), or, in the alternative to stay the case pending Plaintiff's exhaustion of tribal court remedies, arguing the case should be precluded under the doctrine of res judicata. [Doc. 38] This Court denied Defendant's motion to dismiss, concluding that the tribal court's dismissal on statute of limitations grounds had no preclusive effect on the current proceedings. [Doc. 64]

## III. LEGAL STANDARD

<u>Summary Judgment</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. At the summary judgment stage a court must "view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

Because Plaintiff bears the burden of proof on his claims at trial, he must first affirmatively show that, on all the essential elements of his claims, no reasonable jury could find for Defendant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting). "Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Leone*, 810 F.3d at 1153 (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to

disbelieve it. Anything less should result in denial of summary judgment." *Id.* (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)).

## IV. ANALYSIS

To the Court's knowledge, New Mexico law does not impose a duty of care on gas vendors to refrain from selling gasoline to an intoxicated person. The Court is bound to take cognizance of New Mexico law, for as a federal court sitting in diversity the Court must apply the law of New Mexico's highest court, the New Mexico Supreme Court. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). When, as here, "no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* A court may rely on "decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* But federal courts sitting in diversity "are generally reticent to expand state law without clear guidance from [the state's] highest court for it is not a federal court's place to expand [] state law beyond the bounds set by the [highest court of the state]." *Amparan v. Lake Powell Car Rental Companies,* —F.3d— , 2018 WL 827520 *3 (10th Cir. 2018).

"General principles of negligence are relevant to the determination of negligent entrustment." *McCarson v. Foreman*, 1984-NMCA-129, ¶ 13, 102 N.M. 151, 155, 692 P.2d 537, 541. This includes the "(1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 22, 335 P.3d 1243, 1249. The general formulation of negligent entrustment is set forth in the Restatement (Second) of Torts §§ 308 and 390 (Am. Law Inst. 1963 and 1964) (hereinafter "Restatement"), which the

6

New Mexico courts have cited with approval. *See Armenta v. A.S. Horner, Inc.*, 2015-NMCA-092, ¶ 10, 356 P.3d 17, 21-2 ("New Mexico has adopted the general definition of negligent entrustment from the Restatement (Second) of Torts."). Section 308 states that

> [i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement § 308. Thus, under New Mexico law, "the plaintiff must show that the defendant [1] entrusted his [chattel] to another [2] whom the defendant knew or should have known was [] incompetent [], and [3] whose incompetence caused the plaintiff's injuries." *Hermosillo v. Leadingham,* 2000-NMCA-096, ¶ 19, 129 N.M. 721, 726, 13 P.3d 79, 84 (describing negligent entrustment of a motor vehicle). In addition, § 390, which is a special application of the rule stated in § 308, makes sellers of merchandise may be liable for negligent entrustment, providing that

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Armenta*, 2015-NMCA-092 at ¶ 12.

In the context of negligent entrustment "[t]he defendant's ownership or right to control … chattels imposes upon him a duty to use reasonable care to control permissive users to prevent them from negligently or intentionally inflicting harm." Dobbs, et al., The Law of Torts § 422 (2d ed.) "The purpose of the negligent entrustment doctrine is to articulate a set of standards that if met, establish the duty and breach elements of a negligence claim without the necessity for the

detailed analysis that often is required to determine the existence of a duty." *Peterson v. Halsted*, 829 P.2d 373, 378 (Colo. 1992). An owner of chattel has a duty to others not to give control of a dangerous instrumentality to a person incapable of using it carefully. *See Casebolt v. Cowan*, 829 P.2d 352, 358 (Colo. 1992). And the owner breaches that duty the owner makes an entrustment in light of known risks about the entrustee's propensities. *Id*.

Defendant made very few substantive arguments challenging whether a duty of care exists in this case, choosing primarily to distinguish Plaintiff's negligent entrustment cases. Defendant did present one case for review that it suggests is dispositive of its duty, a Louisiana case called *LeBlanc v. Bouchereau Oil Co., Inc.*, (La. App. 1 Cir. 5/8/09); 15 So. 3d 152, 152. There, the defendant bicycled to a gas station, laid fifty cents' worth of gasoline on the counter, pumped gasoline into a soda bottle, then went to his sister's home and doused it in gasoline, setting it afire. *Id.* Louisiana recognizes that gasoline, when entrusted to a six-year-old child unaware of its "dangerous propensities for exploding or becoming ignited," runs an unreasonable risk of harm such that gas vendors are under a common law duty to not sell the product to young children. *See Jones v. Robbins*, 289 So. 2d 104, 107 (La. 1974). The *LeBlanc* court was asked whether that duty extended to refuse a sale to a mature adult. Answering no, the court held that adults recognize gasoline's dangerous propensities, such that gas vendors owed no duty to refrain from selling gasoline to them. *LeBlanc,* 15 So. 3d at 152. However, *LeBlanc* did not answer the question of what duty of care, if any, gas stations owe to motorists on the road in the context of a gasoline sell to a drunk driver.

Plaintiff argues that Defendant was under a duty of care to not sell Denny alcohol by pointing out that New Mexico has a public policy of removing drunk drivers from the road, as evidenced by New Mexico's DWI statute, N.M. Stat. Ann. § 66-8-102 (West 2016). Plaintiff also

relies heavily on the Tennessee Supreme Court's decision in *West v. East Tennesse Pioneer Oil Co.*, 172 S.W. 3d 545, 548 (Tenn. 2005), which held that employees of a convenience store had a duty of care to persons on the roadways not to sell gasoline or to assist in providing gasoline to a person that the employee knows or ought to know is intoxicated and a driver. Defendant suggests that if the duty articulated in *West* is the rule of this case, then genuine issues of material fact defeat Plaintiff's Motion, including whether Pine knew Denny was intoxicated and was the vehicle's driver.

The Court notes there is very little argument about the nature of the duty owed, if any, in this case. For purposes of deciding this Motion only, the Court will assume without deciding that Defendant owed Plaintiff a duty of care to refrain from making an entrustment that created an appreciable risk of harm. Mindful of Plaintiff's summary judgment burden, the Court asks whether on all three elements of Plaintiff's negligent entrustment claim, no reasonable jury could find for Defendant.

### i.     **Whether Defendant Entrusted Chattel to Plaintiff**

The first element that Plaintiff must prove is that an entrustment of chattel occurred. Defendant argues that gasoline is not "chattel" that is entrusted, but rather is merchandise that is sold. Because a seller like Defendant loses ownership of merchandise at the time of sale, Defendant claims that it cannot be liable for negligent entrustment (citing *AAA Cooper Transp. Co. v. Parks,* 18 So.3d 909, 914 (Miss. Ct. App. 2009) (holding that a car dealership cannot be liable for negligent entrustment because it did not have control of the car once sold)). Since Defendant sold the gasoline, it had no control over it, thereby extinguishing Defendant's liability.

New Mexico courts have not squarely answered whether merchandise is chattel capable of being negligently entrusted. However, New Mexico courts do follow § 390 of the Restatement

which provides that, in the context of a sale, negligent entrustment liability under § 390 attaches to any supplier of chattel, including "*sellers*, lessors, donors or lenders …." Restatement § 390 cmt. a. (emphasis added) A number of jurisdictions that have considered the issue have held that sellers are deemed suppliers of chattel under the Restatement, and therefore can be held liable for entrusting a chattel to an incompetent user. *See Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 395 (Alaska 2013); *Brannigan v. Raybuck*, 667 P.2d 213 (Ariz. 1983 (en banc); *Jacoves v. United Merch. Corp.*, 11 Cal. Rptr. 2d 468, 4859 (Cal. Ct. App. 1992); *Peterson*, 829 P.2d at 378; *Kitchen v. K-Mart Corp.*, 697 So. 2d 1200, 1208 (Fla. 1997); *Small v. St. Francis Hospital*, 220 Ill. App. 3d 537, 541-42, 163, 581 N.E.2d 154 (Ill. App. Ct. 1991); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 325-26 (Mo. 2016) (en banc); *West*, 172 S.W.3d at 555; *Bernethy v. Walt Failor's, Inc.*, 653 P.2d 280, 283 (Wash. 1992). These authorities represent a nearly unanimous trend – if not the weight – of authority. Keeping with this trend, and applying § 390 of the Restatement, the Court believes that negligent entrustment applies to sales of chattel, and that merchants such as Defendant can be held liable for negligent entrustment.

Defendant next argues that negligent entrustment liability ends at the point of sale. A minority of courts agrees with Defendant, reasoning that once a sale is completed, the seller no longer has control of the chattel, and so cannot be liable for its misuse. *See AAA Cooper Transp. Co.,* 18 So.3d at 914. On the other hand, other authorities have noted "severe[] critici[sm]" of that view. The Tennessee Supreme Court overruled 50 years of precedent holding that entrustment ends at the point of sale. *See West*, 172 S.W.3d at 554-55. As explained by that court, "[i]t is negligent entrusting which creates the unreasonable risk; and this is none the less when the goods are conveyed." *Id.* at 554. Thus, negligent entrustment occurs "at the moment when control of chattel is relinquished by an entrustor to an incompetent user." *Id*. at 555;

*Delana*, 486 S.W.3d at 325-26 (overruling three lower court opinions holding that a sale of goods extinguished a seller's liability for negligent entrustment, noting that those opinions were contrary to the § 390 of the Restatment). And, many of the authorities cited in the previous paragraph suggest that a sale of merchandise does not extinguish a seller's liability, since in most cases a seller was found liable for negligent entrustment after it had sold an item. The trend of authority suggests that a seller's liability for negligent entrustment does not end at the point of sale.

Next, noting that New Mexico negligent entrustment cases arise primarily from automobile entrustments, Defendant contends that there is a difference between an instrumentality such as an automobile – which can be used in a dangerous manner – and the gasoline involved here. According to Defendant, it is not liable for furnishing gasoline to Denny because "Denny used the gasoline in precisely the manner that it was designed to be used: to serve as fuel for an automobile. Denny's negligence thus does not stem from his use of the gasoline he purchased; instead, it arose from his operation of a motor vehicle while he was intoxicated." [Doc. 48, p. 11] Defendant represents that it is liable to Plaintiff "only if the Court equates using gasoline to fuel a car with operating the fueled vehicle in a negligent manner." [*Id*.]

However, by focusing on Denny's negligence Defendant misunderstands that negligent entrustment is based on the negligence of the entrustor, not that of the entrusee. "[T]he crux of the negligence is the knowledge of the entruster of the … known propensity towards reckless and irresponsible behavior, or other quality of the entrustee, indicating the possibility that he will cause injury." *Douglas v. Hartford Ins. Co.*, 602 F.2d 934, 936 (10th Cir. 1989). Liability for negligent entrustment arises from the act of entrustment, not from the entrustee's conduct. *See*

*McCarson*, 1984-NMCA-129 at ¶ 13 ("it is negligent *to make an entrustment* that creates an appreciable risk of harm.") (emphasis added). Defendant's liability for negligent entrustment does not hinge on Denny's use of the gasoline—even if the gasoline was used for its avowed purpose of powering his vehicle. The tort is not based on an entrustee's use of the chattel; it is based on the entrustor's negligence in entrusting a chattel to an incompetent user.

Finally, Defendant suggests that since no New Mexico case has examined whether vended gasoline is an instrumentality for purposes of a negligent entrustment claim, New Mexico law confines the tort to automobiles only. However, any doubt about whether negligent entrustment applies outside of the automobile context is resolved by New Mexico's jury instruction on negligent entrustment. The instruction expressly provides that it "may apply to chattels other than automobiles," UJI 13-1646 NMRA 2017, indicating that New Mexico's negligent entrustment law anticipates application to various chattels.

In sum, the Court concludes that a sale of gasoline is an entrustment of chattel under § 390 of the Restatement, which New Mexico follows; that a sale of that chattel does not extinguish a seller's liability; and that negligent entrustment claims are not restricted to the automobile context. Plaintiff has carried his summary judgment burden to show that Defendant made an entrustment when it sold Denny gasoline, thereby satisfying the first element of his negligent entrustment claim.

### ii.     Whether Defendant Knew or Should Have Known Denny Was Intoxicated

The next element that Plaintiff must prove is that Defendant knew or should have known that Denny was intoxicated when it sold him gasoline. Construing all reasonable inferences in Defendant's favor as the Court must on a motion for summary judgment, the Court finds that genuine issues of material fact exist regarding whether Defendant, through its gas station clerk

Gloria Pine, knew or should have known that Denny was intoxicated such that entrusting him gasoline posed the risk of injury to others. The record indicates that the first time Yazzie and Denny went to the Giant gas station Pine told them "both of your look intoxicated" and refused to sell them a soda bottle to use for gasoline. On the other hand, the record also indicates that while Pine refused to sell anything to Yazzie, she did not refuse a sale to Denny in the same manner. In fact, Pine did sell Denny a gallon of water and gasoline—twice.

There is no direct testimony from Pine stating that she knew Denny was intoxicated. The evidence regarding Denny's level of intoxication at the time he purchased gasoline and the effect the alcohol had on his appearance when he encountered Pine is genuinely disputed. Plaintiff presented Dr. Goldstein's calculation that Denny's blood alcohol level would have been approximately .21 at the time he purchased the gasoline, a level unlawful under New Mexico's drunk driving statute, N.M. Stat. Ann. § 66-8-102(c)(1) (West 2016). At this level of intoxication, Dr. Goldstein extrapolated that Denny's physiological manifestations could have included muscular incoordination, a staggering gait, slurred speech, lethargy, exaggerated emotional states, and disorientation and drowsiness. However, Defendant presented testimony from Yazzie suggesting that Denny did not present some of the manifestations that Dr. Goldstein describes. For example, Yazzie testified that Denny operated the gas pump, spoke in an intelligible manner, and walked to and from the gas station without problems. Moreover, as Defendant notes, although Dr. Goldstein can guess Denny's likely blood alcohol level, no actual record evidence establishes the exact concentration of alcohol in Denny's blood at the time he made the purchases.

The Court cannot say that Pine's statement to Denny and Yazzie that they both looked intoxicated, Yazzie's statements about whether she perceived Denny as intoxicated, and Dr.

Goldstein's report is evidence "so powerful that no reasonable jury would be free to disbelieve it." *Leone*, 810 F.3d at 1153. Given that Pine did eventually sell Denny gasoline, and the ambivalent nature of some of Yazzie's statements about whether Denny appeared intoxicated at the time he made the purchases, the parties' evidence is, at the least, "susceptible of different interpretations or inferences." *Id*. Thus, what Defendant knew about Denny's intoxication requires resolution by the factfinder. Plaintiff has not carried his summary judgment burden to show that Defendant knew that Denny was intoxicated.

### iii. Whether Denny's Intoxication Caused Plaintiff's Injury

The final element that Plaintiff must prove is that Denny's intoxication was the cause in fact and proximate cause of Plaintiff's injury. "To establish liability, there must be a chain of causation initiated by some negligent act or omission of the defendant, which in legal terms is the cause in fact or the 'but for' cause of plaintiff's injury." *Chamberland v. Roswell Osteopathic Clinic, Inc.,* 2001-NMCA-045, ¶ 18, 130 N.M. 532, 537, 27 P.3d 1019, 1023. In addition, "[a] proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred. *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 34, 134 N.M. 43, 57, 73 P.3d 181, 195. "It need not be the only cause, nor the last nor nearest cause." *Id.* Rather, [i]t is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." *Id*. Whether the defendant proximately caused the plaintiff's injury is an issue for the factfinder. *Id*.

"An intervening force may interrupt the chain of causation, superceding the original negligence, and thus relieving the defendant of liability." *Johnstone v. Albuquerque*, 2006-NMCA-119, ¶ 21, 140 N.M. 596, 603, 145 P.3d 76, 83. However, New Mexico courts have

"virtually eliminated the use of the doctrine of independent intervening cause as a defense in cases involving only allegedly negligent (as opposed to intentional) conduct by the parties because the doctrine is incompatible with [New Mexico's] system of comparative negligence." *Silva v. Lovelace Health System, Inc.*, 2014-NMCA-086, ¶ 14, 331 P.3d 958, 962. Thus, in cases where the defendant is only alleged to have acted negligently, the doctrine of intervening cause is inapplicable. In such an instance "New Mexico follows the rule that any harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always proximate, no matter how it is brought about." *Lucero v. Sutten*, 2015-NMCA-010, ¶ 10, 341 P.3d 32, 35. "[I]n cases involving only negligent conduct, the question is strictly one of causation, i.e., whose negligent conduct, separately or in combination, caused the plaintiff's injury." *Silva*, 2014-NMCA-086 at ¶ 14.

However, the doctrine of intervening cause still applies in "limited cases," *Lucero*, 2015-NMCA-010 at ¶ 9, including where "the defendant realized or should have realized that his negligence created a situation that a third party might use to commit a crime or tort." *Johnstone*, 2006-NMCA-119 at ¶ 24 (citing *Herrera*, 2003-NMCA-018 at ¶ 34 (car repair liable to plaintiffs where it left an unlocked vehicle on its lot with the keys in the ignition, resulting in a thief stealing the vehicle and killing and injuring plaintiffs during a high-speed chase)).

Defendant characterizes Denny's reckless driving as an intervening cause that relieves Defendant of any alleged liability. Since Denny's use of the gasoline "could … have been used for any purpose, from fueling a generator to cleaning engine parts to killing weeds or fueling a car," [Doc. 48, p. 11] Defendant asserts that Denny's choice to use the gasoline in a reckless and criminal manner broke the causal chain that resulted in Plaintiff's injury. Plaintiff responds that Denny's use of the gasoline was not so fortuitous. Likening selling gasoline to Denny to

supplying a car key to a drunk driver, Plaintiff contends that Defendant's negligence in selling gasoline to a clearly intoxicated person was a substantial factor in causing injury, thereby satisfying proximate causation. Gasoline was the "needed part to get [Denny] back on the road." [Doc. 43, p. 9] Since Defendant gave it to him, Defendant created a foreseeable risk of harm, according to Plaintiff, thereby making Defendant liable even though Denny drove in a tortious and criminal manner.

Applying *Herrera*, Denny's criminal driving does not as a matter of law foreclose Defendant's liability. It must be remembered, though, that principles of causation come into play only if a defendant is negligent in the first place. *See Chamberland,* 2001-NMCA-045 at ¶ 18. Because the Court has already determined that genuine issues of material fact remain regarding whether Defendant knew that Denny was intoxicated, it necessarily follows that there is a fact question regarding whether Defendant was negligent at all. *See Celotex Corp. v. Catrett*, 477 U.S. at 322-23 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Negligent Entrustment [Doc. 43] is **DENIED**.

**IT IS SO ORDERED.**

_____
**Judith C. Herrera
United States District Court Judge**