**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


FRANKLIN J. MORRIS, as Personal
Representative of the Wrongful Death
Estate of MARCELLINO MORRIS, JR.,
(Deceased),

      Plaintiff,

v.                                            No. 1:15-cv-00055-JCH-LF

GIANT FOUR CORNERS, INC. d/b/a
GIANT #7251 and ANDY RAY DENNY,
an Individual,

      Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>

      This matter is before the Court on Defendant Giant Four Corners, Inc. d/b/a Giant # 7251's Opposed Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) [ECF No. 90] and Defendant's Opposed Motion to Compel Election of Remedies or Dismiss for Improper Claim Splitting [ECF No. 91]. After carefully considering the motions, briefs, parties' arguments and relevant law, the Court rules as described herein.

**I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

      On December 30, 2011, Marcellino Morris, Jr. was tragically was killed in an automobile collision with Defendant Andy Ray Denny. Plaintiff Mr. Franklin J. Morris, Personal Representative of the Decedent's estate, contends that Defendant Giant is liable for Decedent's death under two theories of negligence – specifically, negligent entrustment based on Defendant's sale of gasoline to Mr. Denny, who was allegedly visibly intoxicated, and negligent hiring, training, and supervision of the employees who sold the gasoline to Mr. Denny.

Plaintiff originally filed a lawsuit in the District Court of the Navajo Nation in Crownpoint, New Mexico. In that court, Defendant moved for and obtained summary judgment on the ground that Plaintiff's suit was time-barred under the Navajo Nation's two-year statute of limitations for personal injury claims, 7 N.N.C. § 602(A)(1). Plaintiff appealed the Navajo district court's decision to the Navajo Nation Supreme Court and that appeal is still pending. Before the Navajo district court issued its decision, Plaintiff filed an identical wrongful death complaint in New Mexico state district court against Defendant alleging vicarious liability for negligent entrustment of a chattel (Count I) and direct liability for negligent hiring, training, and supervision (Count II). Plaintiff also asserted a cause of action for negligence and negligence *per se* against Mr. Denny (Count III). However, Mr. Denny was dismissed as a party. *See* Dkt. No. 9. In January 2015, Defendant removed the state case to this Court based on the parties' diversity of citizenship under 28 U.S.C. § 1332.

In November 2015, Defendant moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative to stay the case pending Plaintiff's exhaustion of tribal court remedies, arguing the case should be precluded under the doctrine of *res judicata*. During the same period, Plaintiff moved for partial summary judgment on Count I of his complaint (negligent entrustment), arguing that Plaintiff was entitled to judgment as a matter of law that Defendant negligently entrusted gasoline to Mr. Denny because he was intoxicated. The Court stayed the case for one-year – until November 29, 2016 – when, although the Navajo Nation Supreme Court had not yet issued a decision, the parties asked the Court to lift the stay and decide the pending Rule 12(b)(6) motion.

In September 2017, the Court issued its ruling on the Rule 12(b)(6) motion against Defendant, concluding that the Navajo district court's dismissal on statute of limitations grounds

had no preclusive effect on the federal case. *See* ECF No. 64. In March 2018, the Court denied Plaintiff's partial motion for summary judgment on negligent entrustment. *See* ECF No. 79. In that Memorandum Opinion and Order, the Court assumed without deciding that Defendant owed Plaintiff a duty of care to refrain from selling gasoline to an intoxicated Mr. Denny, but concluded that genuine disputes of material about whether Ms. Gloria Pine, Defendant's employee who sold Mr. Denny gasoline, knew Mr. Denny was intoxicated precluded entry of summary judgment in Plaintiff's favor.

About two months later, in May 2018, Defendant filed the pending two motions now before the Court. In its motion for judgment on the pleadings on Plaintiff's negligent entrustment claim, Defendant argues that Plaintiff failed to state a claim upon which relief can be granted because New Mexico law imposes no duty of care on Defendant to refrain from selling gasoline to intoxicated third-persons. And in its motion to compel Plaintiff to elect remedies, or, alternatively to dismiss Plaintiff's complaint for improper claim splitting, Defendant contends that under the doctrine of election of remedies Plaintiff is barred from carrying this and the Navajo Nation lawsuits to judgment. Because Plaintiff has no right to "double recovery" of damages in two courts on two identical complaints, Defendant contends that "Plaintiff must elect the forum in which he will proceed." Def.'s Mot. to Compel at 6. Alternatively, if the Court denies Defendant's motion to compel Plaintiff to elect remedies, then Defendant asks the Court to dismiss the federal complaint on the theory that Plaintiff has impermissibly engaged in "claim splitting" of his claims between federal and tribal courts.

The Court will first address Defendant's motion for election of remedies, or, alternatively, to dismiss for improper claim-splitting and then analyze Defendant's motion for judgment on the pleadings regarding Plaintiff's claim for negligent entrustment.

## II.    MOTION FOR ELECTION OF REMEDIES OR TO DISMISS FOR CLAIM SPLITTING

### A.    Election of Remedies

According to Defendant, Plaintiff's tribal and federal complaints have both asserted "money damages … in an amount to be determined at trial to be both just and reasonable." Def.'s Mot. to Compel at 2 (citing Plaintiff's complaint in the District Court of the Navajo Nation, ECF No. 38-1 at 15 ¶ 80 and Plaintiff's federal complaint, ECF No. 1-1 at 12 ¶ 76). Defendant contends that "[i]f Plaintiff is permitted to maintain both the present case and the pending Navajo Nation lawsuit and carry them both to judgment, then he would be attempting to secure two awards for the same wrong," and therefore asks the Court to "compel Plaintiff to choose the forum in which he intends to proceed." Def.'s Mot. to Compel at 1, 3.

The election of remedies doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent," and operates to "prevent[] a party from obtaining double redress for a single wrong." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49 (1974), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014). New Mexico's election of remedies law governs this diversity jurisdiction dispute. *See McKinney v. Gannett Co.*, 817 F.2d 659, 671 (10th Cir. 1987). Under New Mexico law "[t]he doctrine means if a party has two inconsistent existing remedies on his cause of action and makes choice of one, he is precluded from thereafter pursuing the other." *Romero v. J. W. Jones Const. Co.*, 1982-NMCA-140, ¶ 18, 98 N.M. 658, 661, 651 P.2d 1302, 1305 (citations and internal quotation marks omitted). Or as the New Mexico Supreme Court has described the doctrine in another case: "where two inconsistent or alternative rights or claims are presented to the choice of a party, by a person who manifests the clear intention that he should not enjoy both, then he must accept or reject one or the other; and so, in other words, that one cannot take a benefit under an instrument

and then repudiate it." *Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 16, 98 N.M. 690, 693, 652 P.2d 240, 243, *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, ¶ 16, 105 N.M. 57, 728 P.2d 467. The doctrine "exists to prevent double recovery for a single wrong." *Chavarria v. Fleetwood Retail Corp. of New Mexico*, 2005-NMCA-082, ¶ 6, 137 N.M. 783, 789, 115 P.3d 799, 805, *reversed in part on other grounds by Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 6, 140 N.M. 478, 143 P.3d 717.

For instance, under the doctrine a prevailing breach of contract plaintiff cannot receive both damages on the contract and the remedy of rescission because "to receive damages a plaintiff must affirm the contract, but in order to get a remedy of rescission, a plaintiff must disaffirm the contract." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 228 (7th Cir. 1993). "[T]he remedies are mutually exclusive, and the party seeking relief must elect one of them." *Chavarria*, 2005-NMCA-082 at ¶ 6. *See also Teutscher v. Woodson*, 835 F.3d 936, 956 (9th Cir. 2016) (applying the doctrine where retaliatory discharge plaintiff sought alternative remedies for reinstatement and front pay); *Medcom Holding Co.*, 984 F.2d at 229 (noting doctrine's application in property conversion case where the plaintiff may recover damages for converted property or to regain the property, but not both).

Here, the doctrine finds no application to the facts. Plaintiff did not plead inconsistent theories or seek inconsistent remedies as between this lawsuit and the one pending in the Navajo district court. Rather, Plaintiff pleaded and sought identical theories of recovery and remedies in two different courts. Certainly, Defendant is correct that Plaintiff cannot receive double recovery for a single injury. *See Chavarria*, 2005-NMCA-082 at ¶ 6. But Plaintiff will not enjoy a double recovery because of the application of an entirely different legal doctrine: *res judicata*, which "prevents a party or its privies from repeatedly suing another party for the same cause of action

when the first suit involving the parties resulted in a final judgment on the merits." *State ex rel. Balderas v. Bristol-Myers Squibb Co.*, No. A-1-CA-36906, 2018 WL 5291923, at \*4 (N.M. Ct. App. Oct. 24, 2018). A judgment on the merits in either this Court or the Navajo district court will arguable preclude the pursuit of the other. *See Taylor v. Burlington N. R. Co.*, 787 F.2d 1309, 1317 (9th Cir. 1986) ("A plaintiff may prosecute actions on the same set of facts against the same defendant in different courts, even though the remedies the plaintiff seeks may be inconsistent … [b]ut as soon as one of those actions reaches judgment, the other cases must be dismissed."). Defendant is asking the Court to make Plaintiff choose between *forums*, not remedies. *See* Def.'s Mot. to Compel at 6 (stating that "[i]n order to avoid double recovery, Plaintiff must elect the forum in which he will proceed."). However, the doctrine election of remedies has nothing to do with laying forum. As the Court will explain in the section below, parallel actions may proceed to judgment until one becomes preclusive of the other. Because the doctrine of election of remedies is irrelevant to this case, the Court will deny Defendant's motion to apply that doctrine.

**B.      Claim Splitting**

In the alternative, Defendant says "this Court should dismiss the present action based on Plaintiff's impermissible claim-splitting" between tribal and federal courts. Def.'s Mot. to Compel at 1. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (citing *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.,* 296 F.3d 982, 985 (10th Cir.2002)). "For example, a district court may apply the rule against claim-

splitting when a party files two identical—or nearly identical—complaints to get around a procedural rule." *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016). Claim splitting and *res judicata* are both concerned with "promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation." *Katz*, 655 F.3d at 1218. "[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.*

In *Katz*, the Tenth Circuit upheld a trial court's dismissal of the plaintiff's complaint where the plaintiff previously filed related claims that were pending in the same federal court against the same defendants. *See id.* at 1217-1219. But *Katz* did not implicate the "the general rule … that a pending state-court action 'is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' *Wyles*, 661 F.App'x at 551 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, ─── U.S. ───, 134 S. Ct. 584, 588, 187 L. Ed .2d 505 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976))); *Carter v. City of Emporia*, 815 F.2d 617, 621 (10th Cir. 1987) (plaintiff "may freely split a cause of action between federal and state courts and pursue both actions," though one action may preclude the other).

Here, claim splitting is inapplicable because the previously filed case in this litigation was not filed "in the same [federal] district court," *Katz*, 655 F.3d at 1219, but in a tribal court. The Court recognizes that the Navajo district court is not a state court. However, no party has argued, and there is nothing to indicate, that any restriction exists on the tribal court's concurrent civil jurisdiction over Plaintiff's claims. Plaintiff therefore has not improperly engaged in claim splitting by filing duplicative suits in different court systems. *See Wyles*, 661 F. App'x at 551. The Court certainly understands Defendant's assertions concerning the need for efficient justice.

But the federal system tolerates pending parallel actions, "despite what may appear to result in a duplication of judicial resources." *McLaughlin v. Saudi Basic Indus. Corp.*, 955 F.3d 930, 934 (4th Cir. 1992). "[F]ederal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them," and only under limited circumstances, none of which are present here, may a court dismiss a federal suit due to the presence of concurrent proceedings. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (citations and internal quotations omitted).

Defendant's motion to compel Plaintiff to elect remedies or, alternatively, to dismiss Plaintiff's complaint for improper claim splitting is denied in its entirety because neither of those doctrines apply to this case.

## III.     MOTION FOR JUDGMENT ON THE PLEADINGS[1]

After describing the parties' arguments and standard of review, the Court will conduct its analysis of whether Defendant owed the Decedent a duty of care to refrain from selling gasoline to an intoxicated person.

### A.     The Parties' Arguments

In Count I of Plaintiff's Complaint, he contends that Defendant is vicariously liable for negligent entrustment of chattel (the "chattel" at issue being the gasoline Defendant sold to Mr. Denny) because Defendant "owed a duty of reasonable care to the motoring public, including Decedent Morris, … to refrain from selling or supplying gasoline to an intoxicated person when it is foreseeable that the intoxicated person is driving a vehicle or needs the gasoline to start an immobile vehicle." Pl.'s Compl., ECF No. 1-1, ¶ 47. According to Plaintiff, a number of factors made it foreseeable that selling gasoline to Mr. Denny would put the motoring public at risk. Mr.

---

[1] Defendant did not move to dismiss Count II, Plaintiff's claim for negligent hiring, training, and supervision.

Denny was visibly intoxicated when he arrived to the gas station on foot, he and his companion purchased a single gallon of gasoline, making it obvious he was using it to start his car, and Defendant's gas station is located near a highway with a high speeding limit. *See id.* at ¶ 51. Plaintiff says that Defendant breached its duty to not sell gasoline to Mr. Denny by doing so anyway, *see id.* at ¶ 48, and that "but for" Defendant's provision of gasoline to Mr. Denny, he could not have driven and killed the Decedent. *See id.* at ¶¶ 49-50.

Defendant moved to dismiss Count I, contending that Plaintiff's complaint fails to state a claim for relief for negligent entrustment because Defendant owed no duty of care to the Decedent or the motoring public in general to refrain from selling gasoline to an intoxicated person. Citing the New Mexico courts' statements that that the existence of a duty is policy-driven analysis determined by the court as a matter of law "with reference to legal precedent, statutes, and other principles comprising the law," *Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 22, 399 P.3d 939, 947 (citations omitted), Defendant contends that not a single New Mexico legal precedent, statutes, or other legal principle has ever imposed such a duty before.

As for legal precedent, Defendant cites the well-established rule that "a person does not have a duty to act affirmatively to protect another person from harm," *Estate of Eric S. Haar v. Ulwelling*, 2007-NMCA-032, ¶ 14, 141 N.M. 252, 255, 154 P.3d 67, 70 (citations omitted), unless a special relationship "legally obligates" a defendant to protect a plaintiff. *Johnstone v City of Albuquerque*, 2006-NMCA-119, ¶ 7, 140 N.M. 596, 600, 145 P.3d 76, 80 (citations omitted). Such relationships that give rise to a duty could include, for example, those between common carriers and passengers, innkeepers and guests, landlords and tenants. *See Grover v. Stechel*, 2002-NMCA-049, ¶ 11, 132 N.M. 140, 143, 45 P.3d 80, 83. Defendant points out that

no such special relationship exists as between the parties here, and therefore no judicial precedent established a duty on Defendant to control Mr. Denny's conduct in the context of selling him gasoline, even if he was intoxicated.

As for statutes and regulations, Defendant asserts that the New Mexico Legislature has never created a rule governing the liability of gasoline purveyors akin to the State's dramshop liability laws. *See* N.M. Stat. Ann. § 41-11-1; *Mendoza v. Tamaya Enterprises, Inc.*, 2010-NMCA-074, ¶ 8, 148 N.M. 534, 537, 238 P.3d 903, 906 (discussing the judicial and legislative history of New Mexico's dramshop laws). The New Mexico Legislature has made unlawful drunk driving of a vehicle[2] and motorboat,[3] gaming while intoxicated,[4] and selling fireworks to an intoxicated person.[5] In light of these deliberate enactments, Defendant believes that it is unlikely that the State's legislature would intend to impose liability on gasoline vendors to refrain from selling gasoline to an intoxicated person since it has never legislated in this area.

Similarly, Defendant argues that no background legal principles support the imposition of a duty in this case, especially since the duty imposed would be a new and original. Defendant contends that such a duty could not adhere to clear "doctrinal lines" demarcating where the duty begins and ends. Def.'s Mot. to Compel at 13. Defendant points to the Court of Appeals of Indiana's decision in *Williams v. Cingular Wireless*, 809 N.E.2d 473, 478, 479 (Ind. Ct. App. 2004) where the court held that makers of cellular phones owed no duty of care to a person injured in a car accident caused by a driver who is driving and talking, even if a cellular phone maker knows that the device can be used while operating a car. Defendant believes the *Williams* court's reasoning that a merchant should not be held for a third-party's misuse of chattel should

---

[2] N.M. Stat. Ann. § 66-8-102(A)
[3] N.M. Stat. Ann. § 66-13-3(A)
[4] N.M. Stat. Ann. § 17-2-29
[5] N.M. Stat. Ann. § 60-2C-8(C)

apply in this case. Otherwise, the "floodgates" would open to "lawsuits against drive-thru restaurants for accidents caused when a driver gets distracted with eating while driving; hot beverage providers for accidents caused when a driver becomes preoccupied with spillage or drinking while driving; or drug stores that sell cosmetics for accidents caused when a driver is inattentive when applying makeup while driving." Def.'s Mot. to Compel at 12.

Turning to Plaintiff's arguments, Plaintiff identifies no New Mexico caselaw specifically establishing a duty owed by gasoline vendors to third-parties. But according to Plaintiff's survey of New Mexico negligent entrustment cases, the key idea gleaned from these cases is that liability arises from the act of entrusting chattel to an intoxicated person – whether that chattel be a car or gasoline. Because this Court previously made a predictive guess under *Eerie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) that under § 390 of the Restatement, which New Mexico follows, negligent entrustment could apply to sales of chattel, Plaintiff asks the Court to apply that rule to the specific context of vendors selling gasoline.

As support for its position Plaintiff notes that vendors selling gasoline have been held liable for negligently entrusting gasoline to drunk drivers in two cases. In *West v. East Tennesse Pioneer Oil Co*., 172 S.W. 3d 545, 548 (Tenn. 2005) the Tennessee Supreme Court held that employees of a convenience store had a duty of care to persons on the roadways not to sell gasoline or to assist in providing gasoline to a person that the employee knows or ought to know is intoxicated and a driver. And the California Court of Appeal in an unpublished case, *O'Toole v. Carlsbad Shell Serv. Station*, 202 Cal. App. 3d 151, 247 Cal. Rptr. 663, 669 (Ct. App. 1988), held that a gasoline station's sale of gasoline an intoxicated driver was "the factual equivalent of the key to the car, or repairing of the car with a needed part to put the drunk back on the road" and thus could be held liable for negligent entrustment. Aside from these two cases, Plaintiff

cites no binding or persuasive legal precedent concluding that negligent entrustment arises from sales of gasoline.

Turning to legislative enactments and general principles of law that Plaintiff believes create a duty, Plaintiff argues that the State's drunk driving statute clearly evinces a policy of keeping dangerous drunk drivers off the roadways and cites the New Mexico Court of Appeals' statement that "the public's interest in deterring individuals from driving while intoxicated is compelling." *State v. Harrison*, 1992-NMCA-139, ¶ 19, 115 N.M. 73, 77, 846 P.2d 1082, 1086. Entrustment liability on gasoline vendors like Defendant dovetails with and even furthers this policy, Plaintiff says, since the tort particularly applies in cases of intoxicated drivers. That the New Mexico Legislature has not imposed dramshop-style liability on gasoline vendors does not undercut the general idea that an owner of chattel has a duty to others to not give control of a dangerous instrumentality to an incompetent person, says Plaintiff. Finally, Plaintiff argues that if the Court were to find a duty on Defendant to refrain from selling alcohol to intoxicated drivers, it would not open the courthouse doors to a "flood of lawsuits" or result in fault being unfairly assigned to gasoline vendors because New Mexico's pure comparative negligence principles reduce a plaintiff's proportionate recovery by his or her degree of fault. *See Armenta*, 2015-NMCA-092 at ¶ 19.

## B.      Standard of Review

"Except as provided in Rule 12(h)(2) ... a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Turning to the exception provided in Rule 12(h)(2), it states: a motion for "[f]ailure to state a claim upon which relief can be granted ... may be raised: ... by a motion under Rule 12(c)." As for the timing strictures of

Rule 12(c) itself, a party may file a motion under that rule "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). "In other words, although Rule 12(g)(2) precludes successive motions under Rule 12, it is expressly subject to Rule 12(h)(2), which allows parties to raise certain defenses, including the failure to state a claim upon which relief may be granted ... by a motion for judgment on the pleadings under Rule 12(c)." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1101–02 (10th Cir. 2017).

In reviewing a Rule 12(c) motion, the Court applies the same standard of review that applies to Rule 12(b)(6) dismissals. *See Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). Thus, to establish a claim for relief, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Determining whether a complaint contains well-pleaded facts sufficient to state a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Though a complaint need not provide "detailed factual allegations," it must give just enough factual detail to provide "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotations and citations omitted). "If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim." *Id.* (quotations and citations omitted). A reviewing court "accept[s] as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to [the non-movant]." *Sanchez*, 870 F.3d at 1199.

## C. Elements of Negligent Entrustment

"General principles of negligence are relevant to the determination of negligent entrustment." *McCarson v. Foreman*, 1984-NMCA-129, ¶ 13, 102 N.M. 151, 155, 692 P.2d 537, 541. This includes the "(1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 22, 335 P.3d 1243, 1249. The general formulation of negligent entrustment is set forth in the Restatement (Second) of Torts §§ 308 and 390 (Am. Law Inst. 1963 and 1964) (hereinafter "Restatement"), which the New Mexico courts have cited with approval. *See Armenta v. A.S. Horner, Inc.*, 2015-NMCA-092, ¶ 10, 356 P.3d 17, 21-2 ("New Mexico has adopted the general definition of negligent entrustment from the Restatement (Second) of Torts."). Section 308 states that

> [i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement § 308. Thus, under New Mexico law, "the plaintiff must show that the defendant [1] entrusted his [chattel] to another [2] whom the defendant knew or should have known was [] incompetent [], and [3] whose incompetence caused the plaintiff's injuries." *Hermosillo v. Leadingham,* 2000-NMCA-096, ¶ 19, 129 N.M. 721, 726, 13 P.3d 79, 84 (describing negligent entrustment of a motor vehicle). In addition, § 390, which is a special application of the rule stated in § 308, makes sellers of merchandise may be liable for negligent entrustment, providing that

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to

> himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Armenta*, 2015-NMCA-092 at ¶ 12.

In the context of negligent entrustment "[t]he defendant's ownership or right to control … chattels imposes upon him a duty to use reasonable care to control permissive users to prevent them from negligently or intentionally inflicting harm." Dobbs, et al., The Law of Torts § 422 (2d ed.) "The purpose of the negligent entrustment doctrine is to articulate a set of standards that if met, establish the duty and breach elements of a negligence claim without the necessity for the detailed analysis that often is required to determine the existence of a duty." *Peterson v. Halsted*, 829 P.2d 373, 378 (Colo. 1992). An owner of chattel has a duty to others not to give control of a dangerous instrumentality to a person incapable of using it carefully. *See Casebolt v. Cowan*, 829 P.2d 352, 358 (Colo. 1992). And the owner breaches that duty if the owner makes an entrustment in light of known risks about the entrustee's propensities. *Id.*

## D.    Framework for Deciding Duty

"Under New Mexico law, Plaintiffs bear the burden of proving their negligence allegations by demonstrating the existence of a duty." *Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 84 (10th Cir. 2011). To sustain a negligence action (and negligent entrustment is a type of negligence action), "[i]t is axiomatic that a negligence action requires that there be a duty owed from the defendant to the plaintiff." *Paez v. Burlington N. Santa Fe Ry.*, 2015-NMCA-112, ¶ 9, 362 P.3d 116, 120. "'Duty' is a requirement imposed by law to conform one's conduct to a certain 'standard of care.'" In the absence of a legal duty, "there exists no general duty to protect others from harm." *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 7, 140 N.M. 596, 600, 145 P.3d 76, 80. "The first step in determining whether a duty exists in a

particular case is to examine whether the legislature has spoken on the issue." *Chavez v. Desert Eagle Distrib. Co. of N.M.*, 2007-NMCA-018, ¶ 8, 141 N.M. 116, 119–20, 151 P.3d 77, 80–81, *overruled on other grounds by Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶ 8, 326 P.3d 465 (citations omitted); *Torres v. State,* 1995-NMSC-025, ¶ 10, 119 N.M. 609, 612, 894 P.2d 386, 389 ("With deference always to constitutional principles, it is the particular domain of the legislature, as the voice of the people, to make public policy."). As especially relevant here, "[w]here the discussion of duty involves recognition of a new cause of action, or as here, extension of a recognized theory to a new setting, the issue is better framed as a question of policy." *Gabaldon v. Erisa Mortg. Co.*, 1997-NMCA-120, ¶ 21, 124 N.M. 296, 304, 949 P.2d 1193, 1201, *reversed on other grounds by Gabaldon v. Erisa Mortg. Co.*, 1999-NMSC-039, 128 N.M. 84, 990 P.2d 197.

In 2014, the New Mexico Supreme Court instructed courts that policy must be the only consideration when determining whether a defendant owes a plaintiff a duty to exercise reasonable care. *See Rodriguez*, 2014-NMSC-014, ¶ 1, 326 P.3d 465. "The existence of a duty is a question of policy to be determined by the court as a matter of law with reference to legal precedent, statutes, and other principles comprising the law." *Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 22, 399 P.3d 939, 947 (citations omitted). *See Davis v. Bd. of Cty. Comm'rs of Dona Ana Cty.*, 1999-NMCA-110, ¶ 14, 127 N.M. 785, 790, 987 P.2d 1172, 1177 ("For guidance on questions of policy, we look to general legal propositions we may infer from legal precedent within our own state and from other jurisdictions, and we look as well to any relevant statutes, learned articles, or other reliable indicators of community moral norms and policy views[.]") (citations and internal quotations omitted).

E.      **Analysis**

As a federal court sitting in diversity the Court must apply the law of New Mexico's highest court, the New Mexico Supreme Court in determining what duty Defendant owed Plaintiff. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). When "no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* A court may rely on "decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.*

The Court declines to find that Defendant owed to Plaintiff a duty of care to refrain from selling gasoline to an allegedly intoxicated driver for the primary reason that Plaintiff has not cited, and the Court has not found, one single New Mexico judicial case or legislative enactment expressly holding that such a duty exists. In performing an *Eerie* analysis where New Mexico's laws are silent, due respect must be given to "appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and general weight and trend of authority in the relevant area of law." *Wade*, 483 F.3d at 665–66. Here, Plaintiff cites to two non-binding cases, *East Tennesse Pioneer Oil Co.* and *O'Toole*, for the proposition that gasoline vendors must refrain from selling gasoline to intoxicated drivers. The Court has already thoroughly analyzed *East Tennessee Pioneer Oil Co.* in its previous Memorandum Opinion and Order and the Court need not duplicate its analysis herein. Suffice it to say, if *East Tennessee Pioneer Oil Co.* provided the rule of decision in this case, then Defendant would likely be liable for negligent entrustment.

The problem, though, is that *East Tennessee Pioneer Oil Co.*'s holding that vendors owe a duty of care to not sell gasoline to intoxicated persons has not established roots in any other

jurisdiction's law, including New Mexico's. Similarly, the California case on which Plaintiff relies, *O'Toole,* is unpublished and not entitled to precedential effect. It goes without saying that these two non-binding cases do not represent the "general weight and trend of authority in the relevant area of law." *Wade*, 483 F.3d at 665–66. Perhaps more importantly, because of the diversity nature of this case and its implication of federal-state relations, the Court must be "reticent to expand state law without clear guidance from [the state's] highest court for it is not a federal court's place to expand ... state law beyond the bounds set by the [highest court of the state]." *Amparan v. Lake Powell Car Rental Companies*, 882 F.3d 943, 948 (10th Cir. 2018) (citations and internal quotations omitted). The sheer dearth of caselaw on the issue clearly supports the finding, on the current record, that Defendant had no duty of care to Plaintiff or the decedent to avoid selling gasoline to an allegedly drunk driver.

Perhaps the absence of caselaw demonstrating a duty could be overcome if Plaintiff identified relevant statutes imposing a duty. *See Madrid v. Lincoln Cty. Med. Ctr.*, 1995-NMCA-126, ¶ 21, 121 N.M. 133, 140, 909 P.2d 14, 21 (stating that policy questions of duty can be answered by relevant statutes). Although Plaintiff has identified a strong public policy of removing dangerous drunk drivers from the road as evidenced by the State's drunk driving statute, the DWI statute was enacted to protect the motoring public by imposing criminal liability on offending drivers. Plaintiff has identified no policy making gasoline vendors civilly liable for accomplishing that same interest. By way of contrast, New Mexico's Liquor Liability Act, N.M. Stat. Ann. § 41-11-1(E) evinces a public policy of creating tort liability for liquor licensees and social hosts who sell, serve, or provide alcohol. *See Delfino v. Griffo*, 2011-NMSC-015, ¶ 13, 150 N.M. 97, 257 P.3d 917, 923. The Court recognizes that Defendant sold Mr. Denny gasoline, not alcohol, and thus the Liquor Liability Act would not have applied to that transaction.

However, the Court cites the Liquor Liability Act to demonstrate that the legislature is capable of imposing liability on parties for alcohol-related accidents, and that the legislature imposed no liability on gasoline vendors. In the absence of a civil liability statute, Plaintiff effectively asks this Court to impose judicially crafted liability on vendors for sales of gasoline to intoxicated persons where neither the State's courts, legislature, or even Plaintiff offer guidance on the scope and nature of that duty. As Defendant correctly points out, its sale of gasoline to Mr. Denny violated *no* law. If Mr. Denny legally purchased gasoline, then Defendant had no duty to refrain from making that sale.

In sum, Plaintiff has failed to identify binding or persuasive legal precedent, statutes, and other principles of law demonstrating that Defendant owed a duty of care to Plaintiff to refrain from selling gasoline to an intoxicated person. Having determined that Defendant owed no duty of care to Plaintiff in this case, the Court grants Defendant's Rule 12(c) motion to dismiss Plaintiff's claim for negligent entrustment.

## IV.    NOTICE TO PLAINTIFF OF POSSIBLE *SUA SPONTE* DISMISSAL OF COUNT II

Defendant failed to move to dismiss Count II, Plaintiff's claim for negligent hiring, training, and supervision stemming from its employee's sale of gasoline to Mr. Denny. In light of the Court's foregoing discussion of Plaintiff's negligent entrustment claim, the Court is skeptical about the viability of such a claim because presumably the two causes of action are predicated upon the same legal duty that the Court found lacking as a matter of law on Plaintiff's negligent entrustment claim. In instances where a district court is contemplating dismissing a claim *sua sponte*, the Tenth Circuit has said that "the preferred practice is to accord a plaintiff notice and an opportunity to amend his complaint before acting upon a motion to dismiss for failure to state a claim." *McKinney v. State of Okl., Dep't of Human Servs.*, *Shawnee OK*, 925 F.2d 363, 365 (10th

Cir. 1991); *see also Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) (stating that it is "bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition," unless the complaint lacks merit.). But a trial court may dismiss a claim *sua sponte* without notice to the plaintiff "when it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing [her] an opportunity to amend [her] complaint would be futile." *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014). The Court finds no good cause to permit Plaintiff to amend his complaint at this late stage in the litigation. However, the Court affords Plaintiff notice and an opportunity to submit an optional written response to the Court's contemplated dismissal of Count II. Plaintiff's optional memorandum is due with 14-days of entry of this Memorandum Opinion and Order. If Plaintiff files a memorandum, then Defendant must reply to Plaintiff's memorandum within 14-days of Plaintiff's filing. If Plaintiff files no response to this Memorandum Opinion and Order, the Court will dismiss with prejudice all claims against Defendant and enter a final judgment in favor of Defendant on Plaintiff's claims. The parties' briefs shall not exceed 12-pages.

## V.     CONCLUSION

Defendant's motion for election of remedies, or, in the alternative to dismiss Plaintiff's complaint for improper claim splitting is denied because neither of those doctrines apply to this case. However, the Court grants Defendant's Rule 12(c) motion because Defendant had no legal duty to the motoring public to refrain from selling an intoxicated driver gasoline. Finally, the Court is considering dismissing Plaintiff's cause of action for negligent hiring, training, and supervision (Count II). Plaintiff and Defendant are afforded an opportunity to respond to the Court's contemplated dismissal in the sequence described above.

**IT IS THEREFORE ORDERED that** Defendant Giant Four Corners, Inc. d/b/a Giant # 7251's Opposed Motion for Judgment on the Pleadings **[ECF No. 90]** is **GRANTED** and that Giant's Opposed Motion to Compel Election of Remedies or Dismiss for Improper Claim Splitting **[ECF No. 91]** is **DENIED**.

**IT IS SO ORDERED**.

_____
United States District Court Judge